**Forman Watkins**
Forman Watkins & Krutz LLP

Fred Krutz
fred.krutz@formanwatkins.com
Direct Dial: 601.960.8622

February 19, 2016

<u>**Via E-mail and ECF**</u>

Judge Henry T. Wingate
United States District Court
Southern District of Mississippi
501 East Court Street, Suite 6.750
Jackson, MS 39201

   Re: *Google Inc. v. Digital Citizens Alliance, et al.*, No. 3:15-mc-560-HTW-LRA (S.D. Miss.)

Dear Judge Wingate,

I write to bring to your attention documents recently produced by the Mike Moore Law Firm ("MMLF") in response to Google's subpoena, which show that the Digital Citizens Alliance ("DCA") had no attorney-client relationship with MMLF, as it claimed. The documents reveal that the DCA paid MMLF $180,000 not for legal services but for unspecified "consulting" services at the very same time MMLF was officially deputized to lead the Attorney General's so-called investigation of Google. *See* Ex. 1. These documents bear directly on the pending subpoena enforcement proceeding transferred to this Court under Fed. R. Civ. P. 45(f) and argued on October 16, 2015. *See Google Inc. v. Digital Citizens Alliance, et al.*, No. 3:15-mc-560-HTW-LRA (S.D. Miss.).

As the Court will recall, the DCA has withheld at least 600 communications with MMLF, asserting attorney-client privilege. Under established precedent, the DCA bears the burden of proving the privileged status of these withheld documents. *See, e.g.*, *In re Santa Fe Int'l Corp.*, 272 F. 3d 705, 710 (5th Cir. 2001). The DCA did not come close to meeting its burden. It did not provide a privilege log, could not produce an engagement letter with MMLF, and did not identify a single shred of evidence that would suggest that it had a privileged relationship with MMLF.

In light of this deficiency and reports that the DCA hired MMLF to influence the Attorney General's inquiry—the very same inquiry the Attorney General hired MMLF as "Special Assistant Attorneys General" to conduct[1]—Google sought additional information. It served a

---

[1] New York Times, *Google's Detractors Take Their Fight to the States* (Dec. 16, 2014) ("Mr. Moore, in an interview, said he was working pro bono to advise Mr. Hood on how to combat the illegal sale of drugs online. He was then hired, for a fee he would not disclose, by the Digital Citizens Alliance in a similar post. Mr. Moore then became a critical source for the movie industry, according to one email, telling them how Mr. Hood's inquiry was progressing and even alerting industry executives that Google has been sent a subpoena – before it said it had been told."), available at http://www.nytimes.com/2014/12/17/technology/googles-critics-enlist-state-attorneys-general-in-their-fight.html.

City Centre, Suite 100, 200 South Lamar Street, Jackson, Mississippi 39201-4099
Post Office Box 22608, Jackson, Mississippi 39225-2608 › Telephone: 601.960.8600 › Facsimile: 601.960.8613

Detroit Houston Jackson New Jersey New Orleans formanwatkins.com

narrow subpoena on MMLF to assess any potential basis for the DCA's claim of privilege. The subpoena called for non-privileged documents that ought to exist if MMLF had in fact been retained by the DCA to provide legal services—such as engagement letters, billing records, conflict waivers, common interest agreements, and information barriers. In response, MMLF stated that none of the expected documents existed, save for a series of billing invoices sent to the DCA, all stamped "PAID." *See* Ex. 1.[2] That means that MMLF did not have:

- An engagement letter with the DCA defining the nature and scope of services that it would provide;
- Detailed billing records reflecting the provision of legal services;
- A common interest agreement allowing it to share confidential information between the DCA and the Attorney General;
- A waiver of the conflict resulting from representing both the DCA and the Attorney General in the same specific matter; or
- Documentation of any safeguards to ensure that this unusual dual representation did not run afoul of Mississippi ethics laws. *See, e.g.*, Miss. Code § 25-4-105(3)(d) (barring a public official from taking "compensation . . . to influence . . . [the] governmental entity of which he is a member."); Miss. Code § 25-4-105(1) (barring public employees from using their official position "to obtain pecuniary benefit").

What the invoices do show is that MMLF received $180,000 from the DCA between July 2013 and December 2014[3] as a flat $10,000-a-month "consulting fee." *Id.* The invoices do not describe—in any way—the services rendered to earn those fees.

This arrangement flatly contradicts several key assertions that the DCA made to this Court in opposing Google's motion to compel.

*First*, the consulting invoices undermine the DCA's unsubstantiated claim that it had an attorney-client relationship with MMLF. As discussed above, none of the documentation one would expect to see in a bona-fide attorney-client relationship between two sophisticated parties exists here. To the contrary, the MMLF invoices are clear that they cover "consulting," not "representation" or "advice" or any other form of legal services that might give rise to a privilege. This is no surprise given how MMLF markets itself. Four of the five "Practice Areas" listed on MMLF's website have little if anything to do with the provision of legal advice: "Strategic government relations advice and counsel; Campaign and public relations strategy for political candidates; … Identifying and securing funding for nonprofit initiatives; [and] Grassroots advocacy strategy for any entity, private or not-for-profit." On this record, the only

---

[2] MMLF initially produced the invoices in redacted form, concealing the description of services and the amount paid. Since neither the descriptions at issue, nor the amounts paid, constituted or revealed privileged communications, the redactions were improper, and MMLF eventually relented and produced the unredacted invoices. *See Taylor Energy Co. v. Underwriters at Lloyd's London Subscribing to Ins. Coverage Evidence by Policy No. HJ109303*, No. CIV.A. 09-6383, 2010 WL 3952208, at *2 (E.D. La. Oct. 7, 2010) ("[T]his Court finds that information such as contingency fee contracts, hourly rates, hours spent by attorneys working on this litigation, attorney's fees charged and costs incurred are not 'confidential communications' and are therefore not privileged."); *Stonehenge/Fasa-Texas, JDC, L.P. v. Miller*, No. CIV.A. 94-CV-0912-G, 1998 WL 826880, at *2 (N.D. Tex. Nov. 23, 1998) ("These invoices [for legal fees] are not protected from discovery by the attorney-client privilege.").

[3] The December 2014 cut-off coincides with Google's initiation of its lawsuit against the Attorney General.

reasonable conclusion is that no confidential attorney-client relationship existed between MMLF and the DCA.[4]

*Second*, the invoices are fatal to the DCA's argument that it should not have to comply with Google's subpoena because it played only a limited role in the events at issue in this case. At oral argument, the DCA tried to characterize itself as "*…just a nonparty that happens to write reports about dangers on the Internet that Google does not like.*" Hr'g. Tr. at 95. But MMLF's bills make clear the DCA was not just "writing reports"—it was paying $180,000 to the Special Assistant Attorneys General managing the investigation for the Attorney General. *See* Ex. 2. The Court should reject the DCA's attempt to portray itself as an innocent bystander in an effort to avoid full compliance with the subpoena.

*Third*, the size of the bills paid by the DCA refutes any notion that responding to Google's subpoena will impose an unreasonable burden. During oral argument, the DCA argued "*…that this is Google's intent, to burden and hinder the DCA's ability to do its substantive work by imposing litigation costs.*" Hr'g. Tr. at 98. Given that the DCA had the ability to pay designated investigators of the Attorney General a "consulting fee" of $180,000, the DCA cannot credibly argue it does not have the means to respond to a targeted subpoena. The documents Google has requested are relevant to this action and are likely to support Google's allegation that the Attorney General's investigation was pursued in bad faith to coerce Google into giving up its statutory and constitutional rights.

Thank you for your attention to this matter.

Very truly yours,

Fred Krutz

FK/mkm
Attachments

---

[4] The lack of an attorney-client relationship between the DCA and MMLF also bears on the pending enforcement proceedings involving the subpoenas issued to the Motion Picture Association of America, Inc., Jenner & Block LLP, NBCUniversal Media, Inc., Twenty-First Century Fox, Inc., and Viacom, Inc., which were transferred to this Court and also argued on October 16, 2015. *See Google Inc. v. Twenty-First Century Fox, Inc., et al.* No. 3:15-mc-561-HTW-LRA (S.D. Miss.); *Google Inc. v. Digital Citizens Alliance, et al.*, No. 3:15-mc-00560-HTW-LRA (S.D. Miss.). Each of these parties has also argued that the supposed attorney-client relationship between the DCA and MMLF is a basis for withholding responsive documents from *their own productions*. Hr'g Tr. at 84-85; 106. But this argument is not based on any privilege they claim—they instead rely on the claimed (but unsubstantiated) burden of having to evaluate whether MMLF was acting as an attorney for the DCA or as an agent for the Attorney General in any given communication. *Id.* Putting aside whether burden is a valid basis for them to withhold documents (it is not), the MMLF invoices show that the claimed burden is an illusion. There is no need for these parties to parse their communications with MMLF to find those where it was acting as the DCA's attorney because *MMLF never was the DCA's attorney*.