

JONATHAN S. MASSEY*
1325 G Street NW
Suite 500
Washington, DC 20005
202 652 4511
jmassey@masseygail.com

www.masseygail.com

LEONARD A. GAIL**
50 East Washington Street
Suite 400
Chicago, Illinois 60602
312 283 1590
lgail@masseygail.com

February 24, 2016

<u>VIA ELECTRONIC MAIL AND ECF</u>

The Honorable Henry T. Wingate
United States District Court
Southern District of Mississippi
501 East Court Street
Suite 6.750
Jackson, Mississippi  39201

      Re:    *Google Inc. v. Digital Citizens Alliance, et al.*,
              **No. 3:15-mc-560-HTW-LRA (S.D. Miss.)**

Dear Judge Wingate,

      We represent Digital Citizens Alliance ("DCA").  We write in response to the letter brief dated February 19, 2016 (ECF No. 52) (the "February 19 Letter Brief") filed by Google Inc. ("Google") without request by the Court.

      DCA's mission is to inform and to work to protect people from the dangers of and on the internet, such as online crime and scams.  DCA also works to make the Internet a safer place by engaging key internet stakeholders: individuals, internet companies, and civic leaders.  DCA endeavors to educate the public[1] and has lawfully petitioned Attorney General Hood, a law enforcement official, to investigate whether Google has contributed to criminal activity.  DCA takes issue with Google, and it is completely reasonable to do so, because there is substantial evidence both from the recent past and even now that criminals have leveraged Google platforms such as YouTube in their criminal activity.[2]

---

[1]   *See*, *e.g.*, Digital Citizens Alliance, Investigative Reports, *available at* http://www.digitalcitizensalliance.org/cac/alliance/resources.aspx (last visited February 22, 2016).

[2] *See*, *e.g.*, U.S. Department of Justice, Press Release: Google Forfeits $500 Million Generated by Online Ads & Prescription Drug Sales by Canadian Online Pharmacies (Aug. 24, 2011), *available at* http://www.justice.gov/opa/pr/google-forfeits-500-million-generated-online-ads-prescription-drug-sales-canadian-online); Digital Citizens Alliance, *Google & YouTube and Evil Doers: Too Close for Comfort*, at 6-9 (June 10, 2013), *available at* http://bit.ly/1yy2cB7; Digital Citizens Alliance, *Digital Weeds: How Google Continues to Allow Bad Actors to Flourish on YouTube*, at 3-5 (Mar. 10, 2014), *available at* http://bit.ly/1zA1ULD; Digital Citizens Alliance, *Better at Any Cost: The Dangerous Intersection of Young People, Steroids, and the Internet*, at 7-14 (Oct. 8, 2013), *available at* http://bit.ly/1xEYthb).

*\*Not licensed to practice in Illinois \*\*Not licensed to practice in Washington, D.C.*

Judge Wingate
February 24, 2016

  Rather than respond substantively to DCA's significant and justified concerns, Google seeks to impose on DCA remarkably burdensome costs.  Google served DCA with a harassing, overreaching subpoena (the "Non-Party Subpoena") and then transferred the Non-Party Subpoena to the Southern District of Mississippi, far from DCA's home forum of Washington, D.C.  DCA has nonetheless expended considerable resources to comply.  DCA has in good faith met and conferred, collected its documents, engaged a third party vendor to host the documents and the necessary document review, provided Google with the search terms it used to search through its documents, conducted a document review, and produced to Google all the documents that could reasonably be deemed to be relevant.

  Google wants more, but DCA believes that as a non-party it has done enough and has expended more than appropriate resources to comply with the Non-Party Subpoena.  This is particularly true considering Google's inability to demonstrate how the remote potential relevancy of DCA's additional documents could justify such disproportionate expense.  And it bears repeating, as well, that documents relevant to Attorney General Hood's state of mind, should that be relevant, are available from his office.

  Now, in its inappropriate[3] February 19 Letter Motion, Google tries to pierce DCA's attorney-client relationship with Mike Moore and his firm.  But, first and foremost, the documentary evidence Google points to proves the exact opposite of what Google claims.  For attorney-client privilege to attach, the holder of the privilege must show that he "made the communications as to which the privilege is asserted to one acting as a lawyer, and that the communications were made 'for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'"  *United States v. Harrelson*, 754 F.2d 1153, 1167 (5th Cir. 1985) (quoting *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975)).  The existence of an attorney client relationship "is not dependent upon the payment of fees" or "execution of a formal contract;" rather, a professional relationship for purposes of the attorney-client privilege "hinges upon the client's belief that he is consulting a lawyer in that capacity and has manifested intention to seek professional legal advice."  *Westinghouse Electric Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1317, 1319 (7th Cir. 1978), *cert. denied*, 439 U.S. 955 (1978) (citations omitted).

---

[3]  Google points to no Federal Rule of Civil Procedure or Local Rule permitting it to file its February 19 Letter Motion.  While courts sometimes consider letter briefs, it is only after a request that the parties so file and Google can point to no authority for the proposition that a court should consider such a filing when not requested.  *Cf. United States v. Civil*, 174 F. App'x 221, 222 (5th Cir. 2006) (letter brief considered after request by court); *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 601 F. Supp. 286, 288 (S.D. Miss. 1984) (same); *Denson v. Merchants & Farmers Bank*, 946 F. Supp. 470, 477 (S.D. Miss. 1996) (Wingate, J.) (considering factual contentions submitted in letter brief after ordering both parties to submit such letter briefs to the Court).  Thus, without authority or permission Google publicly filed its supplement to its argument in support of a fully briefed and argued motion.  For good reason, this Court's rules require that "[a]ny written communication with the court that is intended to be an application for relief or other action by the court must be presented by motion."  L. U. Civ. R. 7(b).  As such, DCA objects to the February 19 Letter Motion, which should be stricken in its entirety.  Should the Court decide that Google may file additional argument, DCA respectfully requests that the Court order a briefing schedule.

Judge Wingate
February 24, 2016

Google asserts that Mike Moore Law Firm's invoices to DCA "flatly contradict[]" DCA's representations to this Court. That is wrong. It is notable that Google leads with this "flatly contradict[]" language but then does not point to any DCA representation that was in fact false.

Rather, Google claims the invoices "*undermine*" DCA's attorney-client relationship with the Mike Moore Law Firm. This claim is odd, because the invoices show a direct relationship between DCA, as client, and Mike Moore and his law firm, as attorneys, for which DCA paid.

Google conclusorily asserts that the Mike Moore Law Firm invoices prove lack of attorney-client privilege. But Google does not argue that the invoices show that any lawyer with whom DCA communicated at Mike Moore's firm was not "acting as a lawyer." *Harrelson*, 754 F.2d at 1167. Google does not argue that DCA did not need or seek from the law firm "either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *Id.* DCA needed such legal advice, as has been proven out by subsequent events and Google's scorched-Earth litigation strategy. DCA paid a law firm to assist it with legal issues and even where there is no executed, formal agreement regarding the attorney-client relationship, DCA had a reasonable belief that it was "consulting a lawyer" and "manifested intention to seek professional legal advice." *Westinghouse Electric Corp.*, 580 F.2d at 1317.

Google quibbles with the lack of detail in the invoices and the fact that they itemize a monthly "consulting fee" as opposed to "representation" or "advice." But the existence of an attorney-client relationship does not hinge on what fees are paid or how the parties commemorate the relationship. *Id.* And Google points to no authority, nor can it, for the proposition that attorney-client privilege may be pierced when a client pays its attorneys for invoices describing the services as "consulting." This is because courts routinely use the term "consultation" with regard to legal advice. *See Garner v. Wolfinbarger*, 430 F.2d 1093, 1101 (5th Cir. 1970) ("The policy of the privilege has been plainly grounded since the latter part of the 1700s on subjective considerations. In order to promote freedom of ***consultation*** of legal advisers by clients, the apprehension of compelled disclosure by the legal advisers must be removed; hence the law must prohibit such disclosure except on the client's consent. Such is the modern theory.") (citing 8 Wigmore, EVIDENCE, § 2291 at 545) (emphasis added); *In re Auclair*, 961 F.2d 65, 70 (5th Cir. 1992) ("It necessarily follows that when more than one person seeks ***consultation*** with an attorney on a matter of common interest, the parties and the attorney may reasonably presume that the parties are seeking representation of a common or joint matter.") (emphasis added); *In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena*, 926 F.2d 1423, 1431 (5th Cir. 1991) ("Clients often ***consult*** with attorneys concerning matter that they wish to keep confidential. . . . For example, a client may wish to ***consult*** an attorney concerning adopting a child but not wish the matter to be made public. . . .") (emphasis added).

Google seeks to pierce DCA's attorney-client privilege, but that is reserved for extreme cases, such as fraud. "A client who consults an attorney for advice that will serve

3

Judge Wingate
February 24, 2016

him in the commission of a fraud will have no help from the law." *United States v. Ballard*, 779 F.2d 287, 292-93 (5th Cir. 1986) (internal citations and footnotes omitted).  Google knows very well that DCA's lawful petitioning activity is the exact opposite of fraud, and wishes nonetheless that this Court would disregard DCA's attorney-client privilege.  There is no reason or rule that justifies doing so, and the Court should reject Google's unsubstantiated, unsupported argument.

Google also argues that the invoices show that DCA played more than a limited role in the actions underlying the dispute between Google and Attorney General Hood. That argument is not only wrong, because DCA's legal fees have been dwarfed by the parties' and other non-parties' in this matter, but is also completely irrelevant to the question of whether DCA has a valid attorney-client privilege with the Mike Moore Law Firm.  Indeed, the fact that DCA needed and sought legal counsel was prophetic considering the amount of legal costs Google has subsequently forced upon DCA.  And the fact that DCA previously spent $180,000, a sum likely more significant to DCA than to Google, does not justify Google seeking to impose many multiples of that amount by requiring DCA to further comply with the Non-Party Subpoena.

Further, DCA's documents are largely irrelevant and unnecessary to the underlying dispute which, in Google's own words, involves "***a legal question***, squarely answered by the Constitution and the Communications Decency Act" regarding "whether the Attorney General can regulate Google's making accessible . . . content created by third parties . . . ." Memorandum of Google in Support of Motion for a Protective Order at 3, *Google, Inc. v. Attorney General Hood*, No. 14-cv-981 (June 8, 2015) (emphasis added).  DCA has already done enough to comply with the Non-Party Subpoena.  The fact that it previously paid lawyers $180,000 over a year and a half does not justify imposing significant additional costs.  Any further documents Google needs it can and should get elsewhere.

Sincerely,

 /s/  Eli J. Kay-Oliphant

Eli J. Kay-Oliphant

4

## CERTIFICATE OF SERVICE

I, Eli J. Kay-Oliphant, one of the attorneys for Digital Citizens Alliance, hereby certify that I have this date electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Mississippi through the Court's CM/ECF system. I further certify that all parties are represented by attorneys who are registered users of the CM/ECF system and that service will be accomplished through the CM/ECF system.

Dated: February 24, 2016            Respectfully submitted,


                                    By:  /s/ Eli J. Kay-Oliphant

                                       Jonathan S. Massey (D.C. Bar No. 457593)
                                       Eli J. Kay-Oliphant (D.C. Bar No. 503235)
                                       MASSEY & GAIL LLP
                                       1325 G Street, N.W.
                                       Suite 500
                                       Washington, DC  20005

                                       *Attorneys for Subpoenaed Non-Party*
                                       *Digital Citizens Alliance*